Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
Jordan C. Wolff (Arizona Bar #034110)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Madison Alley Transportation & Logistics, Inc., a New York Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Western Truck Insurance Services, Inc., a California corporation, Robert Dion and Jane Doe Dion, husband and wife, John Does and Jane Does I-X, ABC Partnerships I-X, ABC Limited Liability Companies I-X, and XYZ Corporations I-X,<br><br>Defendants. | Case No.: 2:17-cv-03038-SMB<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO PRECLUDE DEFENDANTS' STANDARD OF CARE EXPERT NEAL BORDENAVE**<br><br>(Assigned to the Hon. Susan M. Brnovich) |

Plaintiff Madison Alley Transportation and Logistics, Inc. ("MATL"), by and through undersigned counsel, hereby submits its Reply in Support Motion to Preclude Defendants' Standard of Care Expert Neal Bordenave.

The following Memorandum of Points and Authorities support this reply.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION**

Defendants' standard of care expert, Neal Bordenave, entire report relies on the unsupported facts that Defendant Robert Dion emailed MATL's landlord a Certificate of Liability showing MATL's business income limits were $20,000 and that the landlord accepted the $20,000 as complying with the insurance requirement under MATL's lease

with its landlord. (Doc.78-1 at 4:13-14, 8:18-21; doc. 78 at 5:22-23, 6:10-11, 7:11-12 (citations omitted)). However, there is no evidence that Mr. Dion and/or Western Truck Insurance, Inc. ("Western Truck") (collectively referred to as "Defendants") sent MATL's landlord a Certificate of Insurance or that the landlord accepted it.

During Mr. Dion's deposition, he testified that it is not his job to email the Certificate of Insurance and that it was the "customer service department" that would have sent the email to MATL's landlord. (Doc 78-3 at 85:12-86:06). Furthermore, Defendants have not disclosed any emails that show that the Defendants sent the Certificate of Insurance to the landlord. The fact that Defendants did not reference the email in their response should support that the email does not exist. The basis of Mr. Bordenave's report (the "Bordenave Report") relies on unsupported facts, and therefore, the Bordenave Report must be rejected under *Daubert*.

## II. <u>DAUBERT STANDARD</u>

A *Daubert* motion challenges the admissibility of an expert witness' opinion under Fed. R. Evid. 702 on the grounds that: (1) the expert is not professionally qualified to render the opinion; (2) the opinion is irrelevant; or (3) the ***expert's opinion does not rest on a reliable foundation because it is based on "subjective belief" or "unsupported speculation,"*** and not the knowledge and experience of the expert's discipline. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).

### A. <u>There is No Evidence That Mr. Dion Sent the Certificate of Insurance to the Landlord and the Landlord Accepted It</u>

Defendants rely on Mr. Dion's testimony that "he 'sent [the certificate of insurance] to the landlord, and they accepted it.'" (Doc. 78:6:10-11 (quoting doc. 78-3 at 4:25-85:17, 146:16-147:22)) to justify their expert's conclusion that MATL's landlord received and accepted the Certificate of Insurance that Dion purportedly sent. (*See* Doc 78-3 at 146:25-147:13). However, Mr. Dion actually testified at his deposition that:

> A … And we added it by -- again, by endorsement. We added it to the policy, and *we sent a certificate to his landlord*. He probably -- I say, "probably," but *the Customer Service*

2

> ***Department usually cc's the client*** on anything we do anyway. And they were happy with it. They didn't come back and say they needed anything else.
>
> Q Have you produced those e-mails sending that information to the -- Madison Alley's leaseholder?
>
> A The –
>
> Q You just stated that you sent information to the lessor and cc the client?
>
> A Yeah. It would be attached somewhere of --when customer service -- ***that's not what I do***. ***It would have been done by customer service***. They would have done the -- what you call the -- the ACORD certificate. It's a certificate. But -- and ***they sent them a certificate that showed the coverages***[.]

(Doc 78-3 at 85:12 - 86:06).

Mr. Dion admitted that he did not send the Certificate of Insurance to the landlord. He specifically testified that the Customer Service Department sent the Certificate of Insurance and the client—MATL—was cc'd. (*Id.*) However, Defendants have not produced a single email that shows that they did, in fact, send a copy of the Certificate of Insurance to the landlord. Undoubtedly, if the email existed, the Defendants would have referred to it in their response.

Therefore, all of Bordenave's factual assertions and conclusions based on the notion that the Defendants sent the Certificate of Insurance to the landlord, the landlord received the Certificate of Insurance, and the landlord accepted it should be rejected.

**B.    There is No Evidence to Support that MATL Requested $20,000 of Business Income Insurance**

The Bordenave Report states that "Dion was directed by the principal of MATL, Jeff Owen (Owen), to obtain the cheapest coverage possible to comply with the lease requirements. As such, Dion obtained a quote for $50,000 BPP and $20,000 for Business Income/Extra Expense including rental value." (Doc. 78-1 at 3:7-10. In their response, Defendants asserted that "Mr. Bordenave stated that Defendants procured coverage as requested and directed by Plaintiff." (Doc. 78 at 7:24-25 (citing 78-1 at BORDENAVE000002). There is no evidence to support that MATL requested Defendants

3

procure only $20,000 in business income insurance or that the $20,000 was in compliance with the lease. In fact, during Mr. Dion's deposition, he testified that MATL *did not* request $20,000 of business income insurance and that the $20,000 amount was a number that *Mr. Dion* himself came up with. (Doc. 75-1 at 28:07-02, 28:25-29:09).

The evidence does not support that Western Truck or Dion complied with the lease requirements. Mr. Dion testified that MATL sent him an email "This is what we need. Please fulfill our lease requirements, and let us know what a quote is." 144:17-45:10. The email contained the landlord's insurance requirements as attachments. *Id.* One of the attachments was a "Business Income Worksheet," which Mr. Dion admitted that the leasing company required to be filled out. Dion Dep. at 72:20-23 attached hereto as Ex. 1. When Dion was asked if he ever filled out the "Business Income Worksheet," he stated, "No, I didn't." Mr. Dion claimed that he could not fill it out because he did not have all the information. *Id.* 73:23-74:08. However, Mr. Dion admitted that he never requested any of the information needed to fill out the "Business Income Worksheet" from MATL. *Id.* at 75:10-76:07. More importantly, when Mr. Dion was asked if he ever told anyone at MATL that information was needed to complete the "Business Income Worksheet," he answered, "No." *Id.* 78:08-11.

During his deposition, Mr. Dion was asked questions regarding Mr. Owen's request for the "cheapest" insurance"

> Q Do [current customers or new customers] ever come to you, asking, "I want the most expensive insurance available"?
>
> A No.
>
> Q Are most people looking for the cheapest insurance that they can get?
>
> A No, I wouldn't put it that way.
>
> Q Are they looking to find the appropriate amount of insurance for the cheapest price?
>
> A Yeah.

4

> Q And so when Mr. Owen asked for the cheapest, he was asking for the cheapest policy or premium that satisfied the lease; is that correct?
>
> A Yes.
>
> Q And as we discussed earlier and as you stated, Mr. Owen never said he wanted 20,000 in BI insurance; is that correct?
>
> A I don't recall. No.

Ex. 1 at 214:25-15:16. In fact, Mr. Dion came up with the $20,000 himself. (Doc. 78-3 93:07-02).

The evidence clearly establishes that Mr. Dion did not comply with the lease requirements and that Mr. Owen did not request $20,000 of Business Income Coverage. Bordenave relies solely on the unsupported fact that the landlord received the Certificate of Insurance and that since the landlord purportedly did not complain, that it must mean that the $20,000 business income insurance complied with the lease.

There are no facts that support that the landlord received the Certificate of Insurance and/or accepted it. The Bordenave Report does not have any other opinions stating how the Defendants complied with the lease. (*See* Doc 78-1). Therefore, the Bordenave Report will not be helpful to the fact-finder and must be precluded.

C. **Bordenave Does Not Explain How Mr. Owen Was A Sophisticated Buyer**

Defendants do not dispute that Bordenave has failed to define what a "sophisticated buyer of insurance" is. (*See* doc. 78)   Instead of pointing to Bordenave's report to support his conclusions, Defendants cite *BNCCORP Inc v. HUB Intern. Ltd*., 2015 WL 13636458, at *8 (Ariz.Super.) and *BNC CORP, Inc. v. HUB Int'l Ltd*., 243 Ariz. 1, 13, 400 P.3d 157, 170 (App. 2017). However, the section that Defendants quote does not define or even discuss a "sophisticated buyer." Instead, the cases discuss the relationship and various duties and non-duties between an insurance broker/agent and a client. *Id.*

Defendants contend that "[w]hether or not Mr. Owen is a sophisticated businessman and experienced insurance purchaser is relevant to Defendants' duties, and therefore

5

relevant to Mr. Bordenave's analysis." (Doc. 78 at 10:23-25). However, the Bordenave Report does not explain how Mr. Owen qualified as a "sophisticated businessman and experienced insurance purchaser is relevant." *Id.* As a purported expert, Bordenave needed to explain how Mr. Owen qualified as a "sophisticated buyer of insurance" and how that is relevant to the standard of care. *See Daubert,* 509 U.S. at 590 ("Proposed testimony must be supported by appropriate validation"); *see also Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1319 (9th Cir. 1995*)* ("experts must explain precisely how they went about reaching their conclusions"); *see also Jinro America Inc. v. Secure Invs., Inc.,,* 266 F.3d 993, 1006 (9th Cir. 2001) (excluding "impressionistic generalizations" based on haphazard experiences, anecdotal examples, and news articles).

> **D.** **Neither Defendants Fifth Supplemental Disclosure Responses Nor The Bordenave Report State Bordenave was Retained to Opine Regarding Mr. Dion**

In their response, Defendants stated that their Fifth Supplemental Disclosure Responses show that Defendants Western Truck Insurance Services, Inc. and Mr. Dion are collectively referred to as Western Truck. (Doc 78 at 11:4-5). However, this is incorrect.

The first line of Defendants' Fifth Supplemental Disclosure Responses states only that "Defendants Western Truck Insurance Services, Inc., Robert Dion and Jane Doe Dion (collectively '***Western Truck Defendants***')[.]" (Doc. 78-11 at 2:20-21) (emphasis added). Throughout Defendants' Fifth Supplemental Disclosure Responses, Defendants refer to Defendant Western Truck Insurance Services as "Western Truck" and Defendants refer to both Defendants Western Truck Insurance Services and Robert Dion as "Western Truck Defendants" (Doc. 78-11 at 9:21-23, 10:2-20, 11:22-12-1, 12:11-12, 12:20:21). There does not appear anywhere in the Fifth Supplemental Disclosure Responses any language that Western Truck and Mr. Dion are referred collectively to as "Western Truck."

In the Fifth Supplemental Disclosure Responses, Defendants stated that "Neal Bordenave has been retained as an insurance agent standard of care expert in this matter, and will provide expert opinions on ***Western Truck's*** duties as an insurance agent, and compliance with those duties." (*Id*. at 6:4-7).

The Defendants only refer to Western Truck. The Bordenave Report further supports the fact that Bordenave was not retained to provide an opinion regarding Mr. Dion, which states:

> In this matter I have been retained as an expert to review, opine and testify on insurance services provided by **Western Truck Insurance Services, Inc. (WTIS)** to Madison Alley Transportation & Logistics, Inc. (MATL). The core issue in this case specific to my retention is did **WTIS** use reasonable care, diligence and judgement in procuring insurance for MATL.

(Doc 78-1 at 1).

The Bordenave Report states that Bordenave was only retained regarding Western Truck Services, Inc. Therefore, all opinions regarding Dion should be precluded.

### III. DAUBERT MOTIONS ARE DISPOSITIVE MOTIONS

This Court's original scheduling order stated that "All dispositive motions, ***including Daubert motions***, shall be filed no later than **March 1, 2019**." (Doc. 23 at 4). (emphasis in original). This language suggests that *Daubert* motions are considered dispositive motions and not motions in limine as Defendants contend. Since *Daubert* motions are considered dispositive under the scheduling order, a meet and confer was not required pursuant to L.R. 7.2(l).

However, if the Court determines that a meet and confer was required pursuant to L.R. 7.2(l), MATL requests that it not be the basis for denying its motion. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."). Further, if the Court determines that Plaintiff's motion to preclude Defendant's standard of care expert is a motion in limine pursuant to L.R. 7.2(l), MATL requests leave to file this reply. *See Id;* L.R. 7.2(l).

### IV. CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court preclude Defendants' Standard of Care Expert, Neal Bordenave.

**RESPECTFULLY SUBMITTED** this 22nd day of March 2019.

        **MILLS + WOODS LAW, PLLC**

      By /s/ Sean A. Woods
        Robert T. Mills
        Sean A. Woods
        Jordan C. Wolff
        5055 North 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert B. Zelms
Nishan J. Wilde
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
3636 North Central Avenue, 11th Floor
Phoenix, Arizona 85012
*Attorneys for Defendants*

/s/ Elisabeth Small