Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
Jordan C. Wolff (Arizona Bar #034110)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Madison Alley Transportation & Logistics, Inc., a New York Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Western Truck Insurance Services, Inc., a California corporation, Robert Dion and Jane Doe Dion, husband and wife, John Does and Jane Does I-X, ABC Partnerships I-X, ABC Limited Liability Companies I-X, and XYZ Corporations I-X,<br><br>Defendants. | Case No.: 2:17-cv-03038-SMB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Hon. Susan M. Brnovich) |

Plaintiff Madison Alley Transportation and Logistics, Inc. ("MATL"), by and through undersigned counsel, submits its Response in Opposition to Defendants' Motion for Summary Judgment.

The following Memorandum of Points and Authorities, Plaintiff's concurrently filed Separate Statement of Facts ("PSOF") and Controverting Statement of Facts ("CSOF"), and Defendants' Separate Statement of Facts ("DSOF") incorporated herein by this reference support this response.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF FACTS

MATL was incorporated in 2013. PSOF ¶ 1. MATL's business involves storing and delivering goods used in displays by large, retail merchants, such as department stores. PSOF ¶ 2. Mindi Peters had an ownership interest in MATL and Jeff Owen ran the day to day operation of MATL. PSOF ¶¶ 3-4.

### A.   MATL Moves its Warehouse Operations to Arizona

In June 2015, MATL moved its warehouse operations from New York to Phoenix, Arizona. PSOF ¶ 5. On June 10, 2015, MATL executed a commercial lease (the "Lease") with Phoenix Investors #26 Union Hills, LLC ("Landlord") for a 8,329 square feet building with multiple offices and a warehouse located at 2400 W. Union Hills, Suite 100, Phoenix, Arizona (the "Property"). PSOF ¶ 6. The base rent for the Property was $5,247.27. PSOF ¶ 7. The Lease required MATL to obtain and retain liability insurance; property insurance-building, improvements, and rental value; and lessee's property insurance for the duration of the Lease. PSOF ¶¶ 8-12. Additionally, pursuant to the Lease, in order to modify the insurance requirements under the Lease, both MATL and the Landlord had to agree to the modification in writing. PSOF ¶¶ 13-14. However, at no time did MATL and the Landlord agree in writing, or otherwise, to modify the insurance requirements under the Lease. PSOF ¶ 15.

MATL engaged Defendant Western Truck Insurance Services, Inc. ("Western Truck"), an insurance broker, to procure for MATL the appropriate insurance required by the Lease. PSOF ¶¶ 16-17. Defendant Robert Dion, a Western Truck employee, was the insurance agent and the producer who worked to obtain the appropriate insurance for MATL.[1] PSOF ¶ 18.

On June 9, 2015, prior to executing the Lease, Mr. Owen sent Mr. Dion a copy of the Lease, which specified the appropriate insurance MATL was required to obtain. PSOF ¶ 20. After receiving the Lease from Mr. Owen, Mr. Dion began the process of procuring

---

[1] Mr. Dion was not licensed to sell insurance in Arizona. PSOF ¶ 19.

the appropriate insurance under the Lease. PSOF ¶ 21. On June 9, 2015, Mr. Dion sent a quote for general liability insurance coverage to MATL, which, in part, stated, "Our pledge is to afford you with the highest degree of service in honoring your needs and requirements in your industry. ***We promise to provide you with the best coverage and lowest premiums available to us***."[2] PSOF ¶ 23. The June 9, 2015 letter also stated, "[Western Truck] will provide Insurance marketing services, administration of policies, support services to you regarding this insurance, and other ***risk management consultation***[.]"[3] PSOF ¶ 25.

On June 10, 2015, Western Truck sent CK Specialty Insurance Associates, Inc. ("CK Specialty"), an insurance underwriter a "Commercial Insurance Application" dated June 10, 2015 for commercial general liability for MATL.[4] PSOF ¶ 27. On June 10, 2015, Donna Abowitt, an assistant property manager for the Property, sent Mr. Owen an email with the subject: "Tenant Insurance Requirements." PSOF ¶ 29. Attached thereto was the document titled "Tenant Insurance Requirements."[5] Mr. Owen forwarded that email and the attachment to Mr. Dion that same day. PSOF ¶ 30. Mr. Owen forwarded to Mr. Dion a separate email, in which Pam Collins, an employee for the Property management company, stated, "Hi Jeff, Leave [the loss of rents requirement] off for now. We will get you a sample worksheet tomorrow and you can send it to your agent to update the certificate." PSOF ¶¶ 32-33.

On June 12, 2015, Western Truck sent an email to MATL that included an attached Certificate of Liability Insurance for MATL's general liability insurance. PSOF ¶ 34. The Landlord was not copied on the email. PSOF ¶ 34. On June 26, 2015, MATL employee, Tricia Males, sent an email to Mr. Dion stating, "Hello Robert, Attached please find the

---

[2] The June 9, 2015 quote incorrectly stated MATL's address was 2450 West Union Hills Dr., Phoenix, AZ 85027. PSOF ¶ 24.
[3] Mr. Dion stated that "Risk management is helping them to keep their risks down, keep their claims down, keep -- just keep the -- you know, manage your business properly so you cut down on claims is basically why they would do it." PSOF ¶ 26.
[4] The "Commercial Insurance Application" dated June 10, 2015, incorrectly stated that MATL's address was 2450 W Union Hills Dr. Phoenix, AZ 85027. PSOF ¶ 28.
[5] The "Tenant Insurance Requirements" document referenced specific sections in the Lease pertaining to the insurance MATL was required to obtain under the Lease. PSOF ¶ 31.

3

additional requirements for Insurance per the leasing company. Please email a quote listing total cost for the insurance as they require." PSOF ¶ 36. The Tenant Insurance Requirements document;[6] Section 8 of the Lease (pages 15-17); and a Business Income Worksheet were attached to the email.[7] PSOF ¶ 37. Mr. Dion forwarded the email, including the attachments to Yana Conners of CK Specialty and stated:

> Can you look over these requirements and give us an idea how much it will cost the insured. ***They're asking to get a quote first, not that it's probably going to matter if it's what the landlord requires***. I think we went over some of this when we first wrote the policy.

PSOF ¶ 40.

On July 2, 2015, as part of MATL's application for insurance, Western Truck filled out a "Property Section" form, which stated $50,000 for Business Personal Property ("BPP") and $20,000 for Business Income ("BI"). PSOF ¶ 41. Mr. Dion was listed as the producer. *Id.* The "Property Section" form had a section for applicant's signature; however, no representative of MATL ever saw or signed the document PSOF ¶ 42. Western Truck emailed the "Property Section" form it had filled out regarding MATL to CK Specialty without copying MATL in the email. PSOF ¶ 43. On July 2, 2015, Arti Chand, a Western Truck employee, sent an email to Phyllis Holt of CK Specialty, requesting a quote for "$50,000 BPP and $20,000 Business Income" for MATL without copying MATL in the email.[8] PSOF ¶ 44. Mr. Dion testified that he determined the $20,000 amount of BI and he told Ms. Chand to request $20,000 in BI for MATL from CK Specialty. PSOF ¶ 46. However, Neither Mr. Owen nor any other representative of MATL told Mr. Dion that MATL wanted $20,000 for BI. PSOF ¶ 48. Without MATL's knowledge or prior approval of the amount, Defendants proceeded to obtain a policy of insurance for BI and BPP. *Id.*

---

[6] Tenant Insurance Requirements document is the same document that Mr. Owen sent to Mr. Dion on June 10, 2015. PSOF ¶ 29.

[7] Tenant Insurance Requirements document is the same document that Mr. Owen sent to Mr. Dion on June 10, 2015. PSOF ¶ 38.

[8] The "Commercial Insurance Application" and a "Property Section" forms dated July 2, 2015 were attached to the email chain. PSOF ¶ 47

4

B.     **The Policy**

On September 15, 2015, Colony Insurance Company issued an amendment to MATL's policy that included $50,000 Limit of Insurance for BPP with 90% Coinsurance and $20,000 Limit of Insurance for ***BI with Extra Expense ("EE") including Rental Value*** with 90% Coinsurance. PSOF ¶ 50. However, the Policy incorrectly stated that MATL's address was 2450 W. Union Hills Dr, Phoenix, Maricopa, AZ 85027. PSOF ¶ 51. The Policy defined BI as the "a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and b. Continuing normal operating expenses incurred, including payroll." PSOF ¶ 52. The Policy contained a Coinsurance clause, which provided, in part:

> 1. The Coinsurance percentage shown for Business Income in the Declarations; times
> 2. The sum of:
> a. The Net Income (Net Profit or Loss before income taxes), and
> b. Operating expenses, including payroll expenses, that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

PSOF ¶ 53.

The Policy also had a "Business Income Agreed Value" clause, which, in part, provides:

> a. To activate this Optional Coverage: (1) ***A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":*** (a) During the 12 months prior to the date of the Work Sheet; and (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

PSOF ¶ 54.

However, Mr. Dion did not inform MATL of the Coinsurance clause nor did Mr. Dion request any of MATL finances or "operating expenses." PSOF ¶¶ 56, 60. Mr. Dion did not inform MATL that the Coinsurance Clause of the Policy required MATL's Operating Expenses. Despite receiving a copy of the Landlord's Business Income

5

Worksheet, Mr. Dion did not fill it out.[9] PSOF ¶¶ 56-57. Mr. Dion did not submit any of MATL's financial data regarding MATL's business operations to CK Specialty or the Landlord. PSOF ¶ 59.

Furthermore, Mr. Dion did not read MATL's Policy. PSOF ¶ 61. Since the Policy stated the incorrect address, Mr. Owen did not receive a copy of the Policy until **June 24, 2016**. PSOF ¶ 62-63.

### C. The Renewal of MATL's Policy

In November 2015, Mr. Owen informed Mr. Dion that he was shutting down his two other businesses—Owen Logistics and Meridian Moving Systems—and he was merging the trucking operations of Meridian Transportation and Logistics ("MTL") with MATL. PSOF ¶ 64. As a result, Mr. Owen requested that Mr. Dion obtain trucking insurance for MATL due to the merger. PSOF ¶ 65. During this process, Mr. Dion asked Mr. Owen how much business MATL had done at the time. PSOF ¶ 65. Mr. Owen told him that MATL had done approximately $900,000 as of November 2015 *Id.*[10]

In April 2016, as part of the renewal process, Mr. Dion created a "Renewal Pink Sheet" that stated MATL's estimated gross receipts were $900,000—the exact amount Mr. Owen told him five months prior. PSOF ¶¶ 65, 67-68. Despite knowing that MATL's estimated gross receipts were in November 2015 were $900,000, Mr. Dion did not at any time inform MATL that MATL needed to change or update its BI coverage. PSOF ¶ 69.

Western Truck drafted a renewal of insurance letter to MATL dated June 3, 2016 ("Renewal Letter").[11] PSOF ¶ 71. The second paragraph on the Renewal Letter stated:

> ***In reviewing the policy***, along with the ***information we currently have about your operations***, we have determined that the ***best coverage*** and ***lowest price*** are as shown on the attached quotation. If you have any information that we are unaware of please let us know.

---

[9] The Business Income Worksheet is used to determine the total business income exposure to be insured. PSOF ¶ 8.
[10] On November 13, 2015, Defendants issued a revised quote to MATL for three trucks. PSOF ¶ 66.
[11] Mr. Dion reviewed, approved, and signed the Renewal Letter. PSOF ¶ 70.

6

PSOF ¶ 71.

The attached quotation in the Renewal Letter provided for the same coverage that Defendants procured for MATL the prior year:

- 4mm/3mm agg/occ for general liability;
- $50,000 Business Personal Property with $1,000 deductible; and
- $20,000 Business Income/Extra Expense

PSOF ¶ 72.

On June 7, 2016, Mr. Dion sent Mr. Owen an email with the Renewal Letter attached thereto. PSOF ¶ 73. The Renewal Letter did not specify whether the BI coverage was weekly, monthly, annually, or otherwise. PSOF ¶ 74. Because Mr. Dion had told Mr. Owen that the BI was calculated weekly, Mr. Owen understood that the $20,000 amount stated in the Renewal Letter was a weekly amount. *Id.* On June 9, 2016, Ms. Peters executed the renewal policy. PSOF ¶ 75.

### D. The Incident

MATL subleased part of its warehouse space to Fully Loaded, LLC ("Fully Loaded"). PSOF ¶ 76. On June 9, 2016, a Fully Loaded employee was operating a forklift. PSOF ¶ 77. The employee was transporting a crate and hit a sprinkler with the crate. *Id.* The sprinkler flooded the entire warehouse and office space of the Property. PSOF ¶ 78. Water from the sprinkler damaged MATL's business property as well as Mr. Owen's and Ms. Peter's personal property they stored at the Property.[12] PSOF ¶ 79. Due to the extensive water damage, MATL was not able to use the Property for five months because of black water.[13] PSOF ¶ 84-87.

## II. LEGAL ARGUMENT

### A. Legal Standard

A court should not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[12] 85% of MATL's business and personal property was not salvageable. PSOF ¶ 80.
[13] Black water is grossly unsanitary and contaminated water and it is potentially dangerous to work in an office where there is black water. PSOF ¶¶ 82-83.

7

judgment as a matter of law." [14] Fed. R. Civ. P. 56(a). In assessing the record to determine whether a genuine issue as to any material fact exists, the court is required to resolve all ambiguities and draw all factual inference in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). In reviewing a motion for summary judgment, a court must "not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999).

### B. <u>Negligence</u>

To prove an action for negligence, a plaintiff must demonstrate a duty owed from the defendant to the plaintiff. *Gipson v. Kasey,* 214 Ariz. 141 ¶ 9 (2007). Such an inquiry is normally a question of law for the court. *Id.* at ¶ 10. "The existence of a duty is a distinct issue from whether the standard of care has been met in a particular case." *Id.* While the question of whether a duty is owed is a question for the Court, "what the defendant must do, or must not do… to satisfy the duty… is an issue of fact that turns on the specifics of the individual case." *Id. at* ¶ 10 (internal quotations and citations omitted).

As a preliminary matter: MATL asserted negligence claims against **both** Western Truck, as the broker, and Dion, as the insurance agent. (Doc. 1-1 at 18, ¶¶ 71-73). However, even though Defendants' cited case law referring to the broker's standard of care, Defendants do not make any argument nor present any facts that support as a matter of law that Plaintiff's negligence claims against Western Truck should be dismissed. *Id.*

---

[14] Defendants contended the proper standard for summary judgment is Ariz. R. Civ. P 56(c). (Doc. 73 at 9:21:25). Additionally, Defendants only cite to Arizona state court opinions to support the standard for summary judgment. *Id.* at 9:21-10:7. However, this matter is in federal court and the applicable standard is Fed. R. Civ. P. 56.

8

1. **Defendants owed MATL a duty to exercise reasonable care, skill, and diligence in carrying out the agent's duties in procuring insurance.**

The Arizona Supreme Court has held that a licensed insurance agent owes to his or her client or customer a duty "to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance."[15] *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984). *See also Fink v. Brown & Brown Program Ins. Services Inc.*, CV-17-03869-PHX-DLR, 2018 WL 1744999, at *2 (D. Ariz. Apr. 11, 2018). An agent also has the duty "'***to advise*** his client as to the insurance he wants including the limits of the policy to be issued.'" *Id.* (quoting *Kenyon v. Larsen*, 286 N.W. 2d 759, 764 (Neb. 1980) (internal quotations omitted, emphasis added); *Webb v. Gittlen*, 217 Ariz. 363, 174 P.3d 275 (Ariz. 2008).

The *Darner* court explained:

> An insurance agent performs a personal service for his client, in advising him about the kinds and extent of desired coverage and in choosing the appropriate insurance contract for the insured. ***Ordinarily, an insured will look to his insurance agent, relying, not unreasonably, on his expertise in placing his insurance problem in the agent's hands***.

*Id.,* 140 Ariz. at 397 (quoting *McAlvain v. General Ins. Co. of America,* 97 Idaho 777, 780, 554 P.2d 955, 958 (1976) (internal citations omitted)) (emphasis added).

Moreover, the Arizona Court of Appeals has held that:

> … an agent owes a duty to a client or customer to exercise reasonable care, skill, and diligence in procuring insurance and that questions of the applicable standard of care and ***whether the agent breached his duty by failing to recommend specific coverage present questions for the trier of fact.***

*Sw. Auto Painting & Body Repair, Inc. v. Binsfeld,* 183 Ariz. 444, 445, 904 P.2d 1268, 1269 (App. 1995), corrected (June 2, 1995) (emphasis added).

---

[15] Recently, the Arizona Supreme Court held that an insurance agent had a common-law duty of care to its customers and whether the agent's failure breached [the agent's] common law duty of care, [is] a question[] for the trier of fact. *Wilks v. Manobianco,* 237 Ariz. 443, 447, ¶ 11, 352 P.3d 912, 916 (2015) (citing *Gipson v. Kasey,* 214 Ariz. at 143 ¶ 10).

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

Despite this long-standing case law, Defendants argue that this Court should enter a judgment in their favor as a matter of law because Defendants owed MATL no duty other than to provide the insurance coverage that the client specifically ordered or requested or informing the insured that the requested coverage in unavailable. (Doc. 73 at 10:9-23.) This is not Arizona law.

Defendants' reliance on *BNCCORP, Inc. v. HUB Int'l Ltd.*, 243 Ariz. 1 (App. 2017)[16] is misplaced. In *BNCCORP* the issue whether the insurance professional breached the standard of care was determined only after a bench trial on the merits. *Id.* The Court of Appeals held only that the trial court's finding that the **broker** did not breach the standard of care was not "clearly erroneous". *BNCCORP, Inc.* 243 Ariz. at 9 ¶ 35.

The Court of Appeals indicated that "[w]hether the defendant's conduct breached the standard of care is usually a question for the trier of fact." *Id.* 243 Ariz. at 10, ¶ 40. The Court of Appeals ultimately found that "***[t]he evidence is sufficient to support the trial court's ruling that [the insurance broker] did not breach the applicable standard of care***." *Id.* The *BNCCORP* Court stated that the trial courts are required to "[]examine the facts and undertake that inquiry. *Id.* 243 Ariz. at 10, ¶ 43.

Defendants attempt to transform the narrow holding in *BNCCORP* regarding the legal duty owed by insurance professionals to their customers or clients. Such an attempt has already been specifically rejected by the U.S. District Court of the District of Arizona. *See Fink*, WL 1744999, at *3 (D. Ariz. Apr. 11, 2018) ("Contrary to Defendant's argument, the [*BNCCORP*] court did not hold as a matter of law that such conduct could never breach the duty applicable to the insurer-insured relationship.")

    **2.**   <u>**It is an issue of fact whether Defendants breached the standard of care**</u>

In their motion, the Defendants conflate concepts of duty and standard of conduct. This is improper. "[T]he existence of a duty is not to be confused with details of the

---

[16] Defendants also cite to the *BCNCORP, Inc. v. HUB Int'l Ltd.*, 2014 WL 12756213 (Ariz.Super.), the superior court opinion the *BCNCORP* Court affirmed.

10

standard of conduct." *Fink*, 2018 WL 1744999, at *2 (quoting *Markowitz* at 146 Ariz. at 355).

In *Fink*, the court explained that:

> The precise conduct required to comply with the applicable duty "ha[s] to do with whether the defendant breached the applicable standard of care, not whether a duty and attendant standard of care exist." *Sw Auto*, 904 P.2d at 1271. For example, in *Coburn*, the court distinguished the city's duty to keep the streets reasonably safe from the specific conduct—posting warning signs, installing traffic control devices, fixing potholes—required to comply with that duty. *Coburn*, 691 P.2d at 1080. The court reasoned that "[a]ttempting to define or evaluate conduct in terms of duty tends to rigidify the concept of negligence—***a concept which, by definition, must vary from case to case, depending upon the relationship of the parties and the facts of each case.***" *Id.*

*Fink,* 2018 WL 1744999, at *2. (emphasis added). As noted above, Defendants' duty was to exercise reasonable care. Whether that duty was breached is an issue of fact.

### a. **MATL specifically requested the required insurance under the Lease**

Defendants contend that it complied with MATL's "specific" request for insurance by procuring $20,000 in BI. This is false. MATL specifically requested the Defendants procure the required insurance under the Lease. PSOF ¶¶ 29-31. Additionally, at no time did MATL request BI insurance limited to $20,000 annually. PSOF ¶ 74.

### b. **The $20,000 BI did not even cover the Rental Value of the Lease**

Among the coverage requirements under the Lease was Rental Value:

> Lessor shall also obtain and keep in force during the term of this Lease a policy or policies in the name of Lessor, with loss payable to Lessor and any Lender(s), ***insuring the loss of the full rental*** and other charges payable by all lessees of the Building to Lessor for one year (including all Real Property Taxes, insurance costs, all Common Area Operating Expenses and any scheduled rental increases)

PSOF ¶ 9.

11

The Lease stated that the base was $5,247.27 per month. PSOF ¶ 7. To be compliant with the Lease, MATL needed insurance coverage for at least $62,967.24, which was equivalent to 12 months of the base rent. PSOF ¶ 10. The BI insurance that Defendants procured for MATL included EE with ***Rental Value***. PSOF ¶ 50. However, the total amount of the BI coverage was only $20,000—$42,967.24 less than the Lease required just for the loss of rent coverage. This alone creates a genuine issue of fact regarding MATL's negligence claim against Defendants. Therefore, Defendants' Motion for Summary Judgment must be denied.

### c. Defendants failed to disclose material terms of the policy

In Arizona, an insurance producer has an obligation to disclose material terms of the policy, which means that the terms were sufficiently important to influence a reasonable person's actions, to his customer. *Rawlings v. Apodaca,* 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986); *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.,* 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012) (citing *Ariz.* Admin. Code R20-6-801(D) (1)-(2)). "[n]o agent shall conceal from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim."

Here, MATL did not even receive a copy of the Policy until June 24, 2016. PSOF ¶ 63. Mr. Dion could not have informed MATL of any of the terms of the Policy because he never read it. PSOF ¶ 61.

Defendants claim that MATL is to blame for the Defendants' failure to provide the necessary items to complete the Business Income Worksheet; however, without knowing the terms of the Policy, MATL would not know that the information was required.

Section of 8.2(a) of the Lease, in part, states:

> Said policy or policies ***shall also contain an agreed valuation provision in lieu of any co-insurance clause***, waiver of subrogation, and inflation guard protection causing an increase in the annual property insurance coverage amount by a factor of not less than the adjusted U.S. Department of Labor Consumer Price Index for All Urban Consumers for the city nearest to where the Premises are located.

12

PSOF ¶ 11.

The Coinsurance clause under the Policy states:

> The Coinsurance percentage shown for Business Income in the Declarations; times
> 2. The sum of:
> a. The Net Income (Net Profit or Loss before income taxes), and
> b. Operating expenses, including payroll expenses, that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).[17]

PSOF ¶ 53.

The Policy also had a "Business Income Agreed Value" clause, which, in part, provides:

> a. To activate this Optional Coverage: (1) ***A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":*** (a) During the 12 months prior to the date of the Work Sheet; and (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

PSOF ¶ 54.

Since MATL did not have a copy of the Policy, it had no way of knowing that the Coinsurance clause required MATL's Net Income and Operating Expenses. Further, without having a copy of the Policy, MATL had no way of knowing that Defendants decided to do an agreed value in lieu of the Coinsurance clause.

### C. <u>There is a Material Issue of Fact Regarding Plaintiff's Negligent Hiring, Supervision, and Training Claim</u>

Defendants' sole argument for summary judgment on MATL's negligent supervision claim is that Mr. Dion was supposedly not negligent; therefore, Western Truck cannot be liable for negligent supervision. (Doc. 73 at 11:26-12:1). As discussed herein, there is more than ample evidence of Mr. Dion's negligence. Therefore, Defendants should deny Defendants' Motion for Summary Judgment.

---

[17] The Policy listed 12 different categories to determine operation expenses.

D. **Breach of Contract**

To determine whether a claim based on a breach of duty sounds in contract, this court looks to "whether the defendant would have a duty of care under the circumstances even in the absence of a contract." *Premium Cigars Intern., Ltd. v. Farmer–Butler–Leavitt Ins. Agency,* 208 Ariz. 557, 568, ¶ 33, 96 P.3d 555, 566 (App.2004) (quoting *Ramsey Air Meds, LLC v. Cutter Aviation, Inc.,* 198 Ariz. 10, 15, ¶ 27, 6 P.3d 315, 320 (App.2000)), *abrogated on other grounds by Webb,* 217 Ariz. 363. If the obligation of the party would have arisen even without a contract in place, then the obligation sounds in tort and will not support a breach of contract claim. *Id.; see also Barmat v. John & Jane Doe Partners A–D,* 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987) (explaining that "where the implied contract does no more than place the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is in tort, not contract")

The Arizona Court of Appeals has held that:

> The liability of an insurance agent or broker to his principal depends upon the nature of the contract between them. An agent may unconditionally contract to provide insurance, and if he fails to do so, the agent may be liable for the resulting loss from his breach of contract, or, the broker or agent may make himself liable under a contract requiring the agent to act in good faith and with reasonable diligence to secure insurance for his principal. As to this latter type of contract the agent is held liable to his principal if, on failing to secure insurance, he does not promptly notify his principal of this fact and a loss occurs which is uninsured because of such failure to notify.

*Oney v. Barnes,* 5 Ariz. App. 460, 462, 428 P.2d 124, 126 (1967) (citations and internal quotes omitted).

MATL has alleged numerous breaches of duty on the part of the Defendants. Among these duties are duties that arise from the contract between MATL and Defendants. For example, the contract required that Defendants provide "risk management consultation" to MATL. PSOF ¶ 25. However, as discussed herein, the Defendants have failed to provide any risk management services regarding its procurement of BI insurance for MATL. Their

14

failure to perform those services has resulted in substantial damages for MATL. DSOF ¶ 54.

### E. There is a Material Issue of Fact Regarding MATL's Good Faith and Fair Dealing Claim

In Arizona, a claim for breach of the implied covenant of good faith and fair dealing may be maintained even if an express contract provision relates to the same subject. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, ¶ 17, 46 P.3d 431, 435 (App. 2002) ("Because a party can breach the covenant of good faith and fair dealing if the contract speaks to the same subject, when the express terms are presumed to be the best indicator of the parties' reasonable expectations, it follows that a party may breach the covenant even if the express terms speak to a "related subject.") The Court in *Bike Fashion* also held:

> Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in way not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain.

*Bike Fashion Corp.,* 202 Ariz. at 424.

Here, the Defendants failed to adequately inform MATL of the provisions of the Policy. PSOF ¶¶ 55, 69. In so doing, Defendants interfered with and deprived MATL the benefit of its bargain with Defendants. This denied MATL its reasonably expected benefits under the contract.

### F. Reasonable Expectation

The doctrine of reasonable expectations focuses on what *the plaintiff reasonably believed* with regard to coverage. *Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 272-73 742 P.2d 277, 283-84 (1987).

The Arizona Supreme Court has outlined four scenarios in which the reasonable expectations doctrine applies:

1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights...;

15

2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;

3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or

4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Id.*

Situations two and three discussed in *Gordinier* apply to this case. As described herein, MATL did not receive notice of any terms of the Policy because MATL did not receive a copy of the Policy until June 24, 2016 due to the Policy having the incorrect address. PSOF ¶ 64. Further, Mr. Owen had a telephonic conversation with Mr. Dion in June 2015, in which Mr. Dion told Mr. Owen that BI coverage is calculated weekly and Mr. Owen told Mr. Dion that MATL does $20,000 per week. PSOF ¶¶ 22, 74. The Renewal Letter, which is the one document that Mr. Owen received prior to the Incident on June 9, 2016, stated that MATL's BI coverage was $20,000. The Renewal Letter did not specify whether the BI coverage was weekly, monthly, annually, or otherwise. PSOF ¶ 74. Because Mr. Dion told Mr. Owen that the BI was calculated weekly, Mr. Owen understood that the $20,000 amount stated in the Renewal Letter was a weekly amount. *Id.*

### G. Damages

#### 1. MATL's settlement agreement is not admissible

Pursuant to Rule 408, this Court should not consider the communications between MATL's then counsel and his negotiations for a settlement with a third-party insurance company and the resulting settlement. Fed. R. Evid. 408(a); CSOF ¶¶ 48-53.

If the Court determines that Rule 408 does not apply, MATL's settlement demand to the third-party insurance, dated September 16, 2016, was for ***$1,163,917.22.*** DSOF ¶ 51. Three months later, on November 4, 2016, MATL entered into a settlement agreement

with the third-party for a total of **$456,000**—$707,917.22 less than the September 16, 2016 demand. PSOF ¶ 86. In fact, MATL's settlement with the third-party did not include any amount for loss of income. PSOF ¶ 88.

Defendants request that this Court determine that the entire $456,000 was for lost income, and deduct $456,000 from any award MATL receives in this matter. This argument should be rejected. Defendants have not produced any evidence that any portion of the $456,000 was for lost profits. (*See* Doc. 74).

Further, "[t]he collateral source rule is well established in Arizona tort law." *Michael v. Cole*, 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979); *see also S. Dev. Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, ¶ 33, 31 P.3d 123, 134 (App.2001). The Arizona Supreme Court has held that the collateral source rule requires that "'[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.'" *Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 519, 637 P.2d 726, 729 (1981), quoting Restatement (Second) of Torts § 920A(2) (1979); *see also Hall v. Olague*, 119 Ariz. 73, 73, 579 P.2d 577, 577 (App.1978) ("The so-called 'collateral source rule' states that total or partial compensation for an injury which the injured party receives from a collateral source wholly independent of the wrongdoer does not operate to reduce the damages recoverable from the wrongdoer."). As such, the Defendants do not get the benefit of a collateral source payment, such as the $456,000 MATL received as part of its settlement with a third-party insurance carrier for the damages caused due to the Incident on June 9, 2016.

    **2.** **Defendants are liable to MATL for the resulting damages due to their failure to procure the appropriate insurance**

Under Arizona law, "[a]ll that is required in negligence cases is for the plaintiff to present probable facts from which negligence and causal relations may be reasonably inferred." *Purcell v. Zimbelman,* 18 Ariz. App. 75, 82 (1972). A negligence plaintiff need only "introduce evidence which affords a reasonable basis for the conclusion that it is more

17

likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Id.*

An insurance broker who undertakes to procure insurance for another and through fault or neglect fails to do so is liable to the insured for resulting damages. *Insurance Management of Washington, Inc. v. Eno & Howard Plumbing Corp.*, 348 A.2d 310 (D.C. 1975).

Here, MATL's damages expert determined that as a result of Defendants not procuring the appropriate amount of insurance, MATL's damages are in the range of $1,148,500 to $1,483,600. DSOF ¶ 54; CSOF ¶ 54.

### III. CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court deny Defendants' Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED** this 1st day of April 2019.

**MILLS + WOODS LAW, PLLC**

By   /s/ Sean A. Woods
     Robert T. Mills
     Sean A. Woods
     Jordan C. Wolff
     5055 North 12th Street, Suite 101
     Phoenix, AZ 85014
     *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert B. Zelms
Nishan J. Wilde
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
3636 North Central Avenue, 11th Floor
Phoenix, Arizona 85012
*Attorneys for Defendants*

/s/ Elisabeth Small