Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
Jordan C. Wolff (Arizona Bar #034110)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Madison Alley Transportation & Logistics, Inc., a New York Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Western Truck Insurance Services, Inc., a California corporation, Robert Dion and Jane Doe Dion, husband and wife, John Does and Jane Does I-X, ABC Partnerships I-X, ABC Limited Liability Companies I-X, and XYZ Corporations I-X,<br><br>Defendants. | Case No.: 2:17-cv-03038-SMB<br><br>**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS**<br><br>(Assigned to the Hon. Susan M. Brnovich) |

Plaintiff Madison Alley Transportation and Logistics, Inc. ("MATL"), by and through undersigned counsel, submits its Controverting Statement of Facts ("CSOF").

**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS**

1.  Disputed. MATL was created in 2013 and MATL moved its warehouse operations from New York to Phoenix, Arizona in June 2015. Ex. 1 at 17:24-18:6; 60:17-20; PSOF ¶ 5.

2.  Disputed. Def's Ex. R; CSOF ¶ 1.

3.  Disputed. On June 10, 2015, MATL executed a commercial lease (the "Lease") with Phoenix Investors #26 Union Hills, LLC ("Landlord") for a 8,329 square

feet building with multiple offices and a warehouse located at 2400 W. Union Hills, Suite 100, Phoenix, Arizona (the "Property"). PSOF ¶ 6.

4. Disputed. MATL requested that Defendants procure the required insurance under the Lease for the benefit of both MATL and the Landlord. PSOF ¶¶ 8-9.

5. Disputed. Dion also procured $50,000 in Business Personal Property ("BPP"). PSOF ¶¶ 44, 49-50.

6. Disputed. During Mr. Dion's deposition, he testified that it was not his job to send the Certificate of Insurance to the Landlord and that the customer service department was responsible for sending MATL's landlord the Certificate of Insurance. Ex. 2 at 85:18-86:6. Mr. Dion also testified that the customer service department would have sent the Certificate of Insurance via email and the client, MATL, would have been cc'd on that email. *Id.* MATL did not receive an email from Western Truck in which the Landlord was sent a copy of the Certificate of Insurance pertaining to the $20,000 of Business Income ("BI") and 50,000 ("BPP") Ex. 4 at ¶ 9. Defendants have not produced any evidence that the Certificate of Insurance stated MATL's BI coverage was $20,000 per year was sent to the Landlord via email or otherwise.

7. Undisputed.

8. Undisputed.

9. Disputed. Mr. Owen did not have a conversation with Mr. Dion in April 2016 or anytime thereafter in which Mr. Owen told him the MATL's income was $900,000. PSOF ¶ 67. Mr. Owen told Mr. Dion that MATL's income was $900,000 in November 2015. PSOF ¶ 65.

10. It is undisputed that the "Renewal Pink Sheet" states that MATL's estimated gross receipts were $900,000. However, Mr. Owen told Mr. Dion in November 2015 that MATL's gross income was $900,000 PSOF ¶ 67.

11. It is disputed whether Dion sent a renewal quote to MATL on June 3, 2016. PSOF ¶ 73. On July 7, 2016, Mr. Dion sent Mr. Owen an email with a renewal letter with a quote which was dated June 3, 2016 attached to the email. *Id.* It is not disputed that the

2

renewal quote dated June 3, 2016 stated business income "limits of coverage" as $20,000. However, the renewal quote dated June 3, 2016 specifically stated that, "In reviewing the policy, along with the information we currently have about your operations, we have determined that the ***best coverage*** and ***lowest price*** are as shown on the attached quotation. If you have any information that we are unaware of please let us know." Defs' Ex. H at MATL-000116.

12. Undisputed.

13. It is undisputed that the Lease required general liability insurance of 2,500,000 per occurrence. It is disputed, however, that the Lease did not set a specific amount for Business Interruption insurance. Section 8.3(b) of the Lease provides that the:

> Lessor shall also obtain and keep in force during the term of this Lease a policy or policies in the name of Lessor, with loss payable to Lessor and any Lender(s), ***insuring the loss of the full rental*** and other charges payable by all lessees of the Building to Lessor ***for one year*** (including all Real Property Taxes, insurance costs, all Common Area Operating Expenses and any scheduled rental increases)

Defs' Ex N at MATL-007491, § 8.3(b); PSOF ¶ 9.

The Lease stated that the base monthly rent was $5,347.27. PSOF ¶ 7. Therefore, the lease specifically required at least $62,967.24 full rental coverage. Defs' Ex. S at GG-000007; PSOF ¶ 10.

Additionally, Defendants made the decision to procure BI insurance for MATL after reviewing the Lease. PSOF ¶ 41. The rental coverage was included as a component of BI pursuant to the terms of the Policy. PSOF ¶ 50.

14. Disputed. On June 9, 2015, Defendants sent a quote for general liability insurance to MATL, in which the Defendants stated that "We promise to provide you with the ***best coverage*** and ***lowest premiums*** available to us." PSOF ¶ 23 (emphasis added). In a renewal letter dated June 3, 2016, the Defendants stated that "***In reviewing the policy***, along with the ***information we currently have about your operations***, we have determined that the ***best coverage*** and ***lowest price*** are as shown on the attached quotation." *Id.* (emphasis added).

3

15. Undisputed.

16. Disputed. Defendants have not produced any evidence that Mr. Owen "concocted a false narrative" about the $20,000 of BI being on a weekly basis. In fact, it was Mr. Dion that told Mr. Owen the BI was calculated on a weekly basis and Mr. Owen told Mr. Dion that MATL will do $20,000 per week. PSOF ¶ 74. Further, in the renewal letter dated June 3, 2016, the $20,000 BI did not state whether it was weekly, monthly, or yearly. *Id.* Therefore, based on the conversations Mr. Owen had with Mr. Dion, Mr. Owen understood that the $20,000 was a weekly number. *Id.* Additionally, Mr. Owen did not receive a copy of the Policy until June 24, 2016, and would have no way of knowing that the $20,000 BI coverage was annual, not weekly, unless the Defendants told MATL that.

17. Undisputed.

18. Disputed. The June 3, 2016 Letter does not state the *annual* Limits of Coverage for Business Income/Extra Expense was $20,000. Defs' Ex. I. The June 3, 2016 Letter merely states that the Limits of Coverage for Business Income/Extra Expense was $20,000. *Id.* at MATL-006863. The only term annual is only mentioned in the June 3, 2016 Renewal Letter in reference to the premium. *Id.* at MATL-006863-64.

19. Undisputed. However, the deposition citation does not support Defendants' contention.

20. Undisputed.

21. It is undisputed that the total premium stated in the renewal application was $3,599.20 and that this is the same amount stated in the June 3, 2016 Renewal Letter. However, the June 7, 2016 email with the June 3, 2016 Renewal Letter was not sent to Mindi Peters. Defs' Ex. I.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

4

27. Disputed. Mr. Dion agreed to procure appropriate insurance, which included filling required documentation, including the income worksheet. PSOF ¶ 17.

28. Disputed. Defendants do not cite to anything to support that "Mr. Dion did not have the necessary accounting and financial background to make the required calculations on the business income worksheet." However, during Mr. Dion's deposition, he stated:

> Q Have you reviewed the business income worksheet?
> A Yes, I have.
> \*\*\*
> Q BY MR. WOLFF: Do you see any complex equations that are involved with determining the total business income exposure?
> A I don't recall.
> Q Did you see any arithmetic or math that you're not capable of performing yourself?
> A No. I don't know. I'd have to -- again, I'd have to get the information needed, and I'd have to try to fill it out.
> Q Correct. If you had the information, do you see any sort of equation here that provided the information that you could not figure out either by making the equation on paper or using some sort of assistance like a calculator?
> \*\*\*
> THE WITNESS: Probably not.

Defs' Ex. E at 216:04-24.

29. Undisputed. However, Defendants did not inform MATL that they needed MATL's financial information nor that they needed MATL's financial information on an accrual basis. Further, without Mr. Owen having a copy Policy and Defendants telling Mr. Owen that they needed MATL's financial on an accrual basis, MATL had no way of knowing what information the Defendants needed to obtain BI for MATL pursuant to the Policy. PSOF ¶ 60.

30. Disputed. Mr. Garzella did not testify that he did not know the difference between accrual and cash basis. He stated that he did not know the difference off the top of his head. Defs' Ex. D at 20:1-11. Further, Mr. Garzella testified that his business is set up on an accrual basis and that his business had an accountant that made accrual basis calculations for his business. *Id.*

31. Disputed. *See* CSOF ¶ 28.

32. It is undisputed that Mr. Dion testified that he has no background in accounting or financial analysis. However, Mr. Dion testified that if he had the information he could have done the required equations to fill out the business income worksheet. *See* CSOF ¶ 28.

33. Undisputed. However, see CSOF ¶ 28.

34. Disputed. The Business Income Worksheet states, "Notes: Calculate on accrual basis (not a cash basis) and provide actual values for 12 months figuring on the fiscal year." Defs' Ex. M at MATL-07493.

35. It is undisputed that Mr. Dion received a copy of the Business Income Worksheet on June 26, 2015. However, MATL was created in 2013. PSOF ¶ 1. MATL had in fact been earning income since at least February 2015. Therefore, there was some information on which to calculate annual income from the previous 12 months. Further, it is undisputed that the Defendants never requested any of MATL's financial information.

36. Disputed. *See* CSOF ¶ 27-28.

37. Undisputed.

38. Undisputed.

39. Disputed. Defendants' rely on the deposition of Plaintiff's standard of care expert to support this contention. Mr. Garzella did not state that "no one told Mr. Dion that Owen Logistics and Meridian merged with Madison Alley." Mr. Garzella said that in the documents, letters, and emails that he reviewed he did not see anything where anyone told Mr. Dion that Meridian and Owen Logistics merged. Defs' Exs. D at 14:11-21. However, Mr. Owen had a telephonic conversation with Mr. Dion in November 2015, in which Mr. Owen told Mr. Dion that he was closing his other two businesses, Owen Logistics and Meridian Moving systems, and was and merging the trucking part of Meridian Transportation and Logistics ("MTL") with MATL. As a result of this conversation, Mr. Owen requested that the Defendants procured MATL additional insurance for MATL's three newly acquired trucks. PSOF ¶¶ 65-66.

6

40. Undisputed.

41. Disputed. During Mr. Garzella's deposition, Defendants' counsel read a quote from *BNC Corp. v. HUB International, Ltd.* and then asked Mr. Dion, "so according to the Arizona case law that we just reviewed, it is not Mr. Dion's duty to determine the necessary dollar amount of coverage, correct?" Mr. Garzella agreed. Garzella Dep. attached hereto as Ex. 17 at 27:24-36:12. However, Mr. Garzella is not an attorney nor did he know the specific facts of the case or if the facts were similar to the facts in this matter. Ex. 17 at 26:22-27:05, 56:15-22.

42. Disputed. Mr. Garzella did not admit that that "insurance agents do not have an independent duty to identify their client's needs and to advise them whether they may be underinsured because it is the client's responsibility or duty, not the insurance agent's, to determine the amount of coverage needed and advise the agent of those needs." Defendants' counsel was reading isolated quotes from *BNC CORP, Inc. v. HUB Int'l Ltd.*, and Mr. Garzella was agreeing with Defendants' counsel that those quotes were in the case. Further, Mr. Garzella is not an attorney nor did he know the specific facts of *BNCCORP, Inc. v. HUB Int'l Ltd.* or if the facts were similar to the facts in this matter. Ex. 17 at 26:22-27:05, 56:15-22.

43. Disputed. CSOF ¶ 42.

44. It is undisputed that Mr. Garzella said, "Madison Alley never determined the amount that they wanted and advised Mr. Dion to procure that amount." Defs' Ex. D at 66:11-67:6. However, it is undisputed that MATL was relying on Defendants to obtain appropriate insurance coverage.

45. Undisputed.

46. Disputed. Defendants do not cite to anything that MATL knew that its generating revenue of $900,000 as of June 2016. In November 2015, Mr. Owen told Mr. Dion that MATL's had done approximately $900,000 for the calendar year. PSOF Ex. 4 at ¶ 12.

7

47. Disputed. The purpose of Mr. Dion's procurement of insurance was to ensure that MATL obtained the required insurance pursuant to the Lease between MATL and the Landlord. Defs' Ex. N. The Lease stated specific insurance requirements that MATL needed to obtain and retain. At no time did MATL and the Landlord agree in writing, or otherwise, to modify the insurance requirements under the Lease. PSOF ¶ 15.

48. Objection. Defendants cite Exhibit P as their sole support for this contention. Defendants' Exhibit P is a settlement letter from MATL's then counsel to a third-party insurance company and is subject to Fed. R. Evid. 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a).

Additionally, pursuant to Fed. R. Civ. P. 56(e), evidence presented by a party must be admissible. Therefore, the Court should not consider Defendants' Exhibit P.

49. Objection. The Defendants' Exhibit P is subject to Fed. R. Evid. 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Additionally, pursuant to Fed. R. Civ. P. 56(e), evidence presented by a party must be admissible.

However, as a result of the sprinkler system getting struck, large amounts of water poured into the warehouse and the office of the Property. The water damage destroyed 85% percent of MATL's business and personal property. The 15% of the salvageable items were not returned to MATL until the middle of October 2016. PSOF ¶ 80. Additionally, there was "black water" warehouse and office. The "black water" was not removed from the Property until October 2016. PSOF ¶ 83 It was not recommended to work in an area where there was "black water" because it was potentially dangerous. PSOF ¶ 82. MATL's business ceased because it did not have any of its business property or use of the Property for over four months. PSOF ¶ 84.

50. Objection. The Defendants' Exhibit P is subject to Fed. R. Evid. 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Additionally, pursuant to Fed. R. Civ. P. 56(e), evidence presented by a party must be admissible.

51. Objection. The Defendants' Exhibit Q is subject to Fed. R. Evid. 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Additionally, pursuant to Fed. R. Civ. P. 56(e), evidence presented by a party must be admissible.

52. Objection. The Defendants' Exhibit Q is subject to Fed. R. Evid. 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Additionally, pursuant to Fed. R. Civ. P. 56(e), evidence presented by a party must be admissible.

53. Objection. The Defendants' Exhibit Q is subject to Fed. R. Evid. 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Additionally, pursuant to Fed. R. Civ. P. 56(e), evidence presented by a party must be admissible.

54. Undisputed.

55. Undisputed.

**RESPECTFULLY SUBMITTED** this 1st day of April 2019.

                              **MILLS + WOODS LAW, PLLC**

                              By  /s/ Sean A. Woods
                                    Robert T. Mills
                                    Sean A. Woods
                                    Jordan C. Wolff
                                    5055 North 12th Street, Suite 101
                                    Phoenix, AZ 85014
                                    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert B. Zelms
Nishan J. Wilde
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
3636 North Central Avenue, 11th Floor
Phoenix, Arizona 85012
*Attorneys for Defendants*

                                    /s/ Elisabeth Small

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556