**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Madison Alley Transportation & Logistics Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Western Truck Insurance Company, et al.,<br><br>Defendants. | No. CV-17-03038-PHX-SMB<br><br>**ORDER** |

At issue is Defendants Western Truck Insurance Company ("Western Truck") and Robert Dion's ("Mr. Dion") (collectively, "Defendants") Motion for Summary Judgment (Doc. 73, "Mot."). Defendants also submitted a Statement of Facts. (Doc. 74, "DSOF"). Plaintiff Madison Alley Transportation and Logistics Inc. ("Madison Alley" or "Plaintiff") submitted a Response to the Motion (Doc. 80, "Resp."), along with a Separate Statement of Facts (Doc. 81, "PSOF") and a Controverting Statement of Facts (Doc. 82, "CSOF"). Defendants submitted a Reply to Plaintiff's Response. (Doc. 83, "Reply"). Plaintiff alleges Defendants did not properly broker insurance for its warehouse in Phoenix. Plaintiff alleges five claims: (1) Negligence/Insurance Producer Malpractice; (2) Breach of Contract; (3) Breach of the Covenant of Good Faith and Fair Dealing; (4) Negligent Training and Supervision; and (5) Reasonable Expectations. For the reasons that follow, the Court will grant summary judgment on the counts arising out of contract—counts one, three, and five—but deny summary judgment on the tort claims—counts one and four.

**I.     Background**

Plaintiff operates a business that stores and delivers goods for large retail merchants. (PSOF ¶ 2). Mindi Peters ("Ms. Peters") has an ownership interest in Madison Alley, and Jeff Owen ("Mr. Owen") runs the day-to-day operations. (PSOF ¶¶ 3–4). In June 2015, Plaintiff moved its warehouse operations from New York to Phoenix, Arizona. (PSOF ¶ 5). As part of the move, Plaintiff agreed to a lease for an 8,329 square foot warehouse for $5,247.27 per month. (PSOF ¶¶ 6–7). The lease required Plaintiff to obtain insurance for the property. (PSOF ¶ 8). The dispute that brings this case to the Court is whether Defendants procured insurance as requested by Plaintiff.

In early June 2016, a sublessee of Plaintiff caused a flood in the warehouse. (PSOF ¶¶ 76–78). The flood damaged Madison Alley's business property along with Ms. Peters' and Mr. Owen's personal property and stopped Madison Alley from operating for about five months. (PSOF ¶¶ 79, 81–85). For damages from the flood, Madison Alley entered into a settlement with its sublessee's insurer for $456,000.

Prior to the flood, Plaintiff contends Mr. Owen instructed Defendants to procure a policy that complied with the requirements of the lease. (PSOF ¶¶ 8–9). Among other things, the lease required $2.5 million in general liability coverage and insurance for "the loss of the full rental . . . for one year." (DSOF ¶ 13; PSOF ¶¶ 8–11; CSOF ¶ 13). Defendants procured a policy with $3 million in general liability coverage and $20,000 in business income coverage. (DSOF ¶ 5). These coverage amounts represented annual limits, but Mr. Owen alleges he interpreted the $20,000 as weekly coverage based on a conversation he had with Mr. Dion. (PSOF ¶ 22). In that alleged conversation, Mr. Dion told Mr. Owen that business income insurance was calculated "by the week," and Mr. Owen told Mr. Dion that Madison Alley generates at least $20,000 in revenue per week. (*Id.*).

Plaintiff also believes Defendants failed to procure adequate insurance because they did not disclose material terms of the policy, including a coinsurance provision for business income coverage and a "business income agreed value clause." (PSOF ¶¶ 11, 53–54). The

business income agreed value clause required a financial worksheet to determine total exposure to the insured. (PSOF ¶¶ 54, 58). The landlord also required a business income worksheet that Mr. Owen forwarded to Mr. Dion, but Mr. Dion did not complete. (PSOF ¶¶ 55–58). Furthermore, the $20,000 business income coverage would not cover a full year's rental as required by the lease. (PSOF ¶ 9). Plaintiff also alleges it could not have learned of the policy's deficiencies until after the accident, because Defendants sent a copy of the policy to the wrong address. (PSOF ¶¶ 62–63).

Defendants argue that in the context of Plaintiff's request for insurance, Plaintiff only instructed Mr. Dion to find the cheapest amount of business interruption coverage that would satisfy Madison Alley's landlord and the policy clearly shows that Madison Alley was paying annual premiums for annual coverage limits. (DSOF ¶¶ 12, 14). In Defendants' view, the landlord let Madison Alley move into the warehouse, so they sufficiently performed to the standard of care. (DSOF ¶ 4). They also argue they have no obligation to advise insureds about the appropriateness of their coverage, (Mot. at 10), and Mr. Dion did not agree to fill out the financial worksheets nor could he have because he did not have the required expertise and Madison Alley had not be operating long enough to have the required information, (DSOF ¶¶ 27–28, 34–35).

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited

materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

**III. Analysis**

1. Plaintiff's Contract Claims

Defendants assert, and the Court agrees, that they cannot be liable for breach of contract (Count 2), breach of the covenant of good faith and fair dealing (Count 3), or reasonable expectations (Count 5) because there is no contract between Defendants and

Plaintiff. Further, if there is a contract, the claim still sounds in tort rather than contract because Defendants were hired to provide professional services. At oral argument, Plaintiff said the contract was partially verbal and partially written, but admitted the contract claims were brought as an "alternative theory." Plaintiff specifically points to a June 9, 2015, letter sent by Defendants that promised "[i]nsurance marketing services, administration of policies, support services to you regarding this insurance, and ***other risk management consultation***." (PSOF ¶ 25) (emphasis added by Plaintiff). The Court agrees with Defendants.

A contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Federal Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983). Even viewing the facts in the light most favorable to Plaintiff, the Court is unable to ascertain specific terms in order to determine the obligations involved. For example, the letter Plaintiff points to was an insurance quote. It may have promised risk management consultation by Western Truck, but not with enough specificity that the Court can ascertain the obligations involved. Plaintiff does not even allege Mr. Owen asked Mr. Dion for a specific amount or gave an acceptable range of business income coverage that he wanted or needed. Instead, he merely alleges that "[n]either Mr. Owen nor any other representative of [Madison Alley] told Mr. Dion that [Madison Alley] wanted $20,000 for [business income]." (PSOF ¶ 48). Again, this allegation does not provide the Court with enough information to ascertain the obligations involved in an alleged contract.

Additionally, the Court is persuaded by the Defendants that to the extent there was a contract, the dispute still "arises out of tort" because it would have been a contract for professional services. When a contractual relationship gives "rise to a duty to perform in accordance with a certain standard of care, this legally imposed duty exists separate and apart from the contract giving rise to the duty." *Lewin v. Miller Wagner & Co., Ltd.*, 725 P.2d 736, 743 (Ariz. Ct. App. 1986). In Arizona, insurance brokers have a legally imposed duty to perform with a certain standard of care: "An insurance agent owes a duty to the

insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Darner Motor Sales, Inc. v. Univ. Underwriters Ins. Co.*, 682 P.2d 388, 402 (Ariz. 1984) (quoting *Quality Furniture v. Hay*, 595 P.2d 1066, 1068 (Haw. 1979)). Failing to comply with this standard of care is "a breach of the legal duty imposed and is not an action 'arising out of contract' under A.R.S. § 12-341.01(A)." *Lewin*, 725 P.2d at 743.

Here, Defendants acted as an insurance broker for Plaintiff. This gave rise to a duty to perform to a certain standard of care. Breaching that standard of care is an action that sounds in tort, not contract. Therefore, Defendants cannot be liable for breach of contract or the implied covenant of good faith and fair dealing.

Additionally, the doctrine of reasonable expectations is not applicable here. Plaintiff brought a claim under "reasonable expectations," but such a cause of action does not exist. Rather, it is a rule of construction. *See Crawford v. Ranger Ins. Co.*, 653 F.2d 1248, 1251 (9th Cir. 1981); *Frutiger v. USAA Gen. Indem. Co.*, No. CV18-00547-PHX-JJT, 2019 WL 2232524, at *3 (D. Ariz. May 23, 2019). The reasonable expectations doctrine provides for relief "from certain standardized clauses of agreements which had not been negotiated, providing they were clauses which, 'because of the nature of the enterprise, customers will not be expected to read and over which they have no real power of negotiation.'" *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987) (quoting *Darner*, 682 P.2d at 399). Courts use the doctrine to "refuse enforcement even to unambiguous boilerplate terms." *Id.* The term at issue here—the business income cap—is not an unnegotiated boilerplate term. Therefore, the doctrine of reasonable expectations does not provide relief. Accordingly, the Court will grant summary judgment on the breach of contract claim (Count 2), the breach of the covenant of good faith and fair dealing claim (Count 3), and reasonable expectations (Count 5).

2. <u>Plaintiff's Negligence Claims</u>

To establish a negligence claim, Plaintiff must prove: (1) Defendants had a duty to conform to a certain stand of care; (2) they breached that standard of care; (3) the breach

1  caused an injury to Plaintiff; and (4) Plaintiff has actual damages. *Gipson v. Kasey*, 150
2  P.3d 228, 230 (Ariz. 2007). A duty exists when a relationship between parties is "such that
3  the defendant was under an obligation to use some care to avoid or prevent injury to the
4  plaintiff." *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 367 (Ariz. 1985). The Arizona
5  Supreme Court has recognized that an insurance broker has a duty to an insured to "exercise
6  reasonable care, skill and diligence in carrying out the agent's duties in procuring
7  insurance." *Darner*, 682 P.2d at 402 (quoting *Quality Furniture*, 595 P.2d at 1068).
8  Insurance agents have a responsibility "to exercise that degree of care ordinarily to be
9  expected from others in their profession." *Id.* at 403; *see BNCCORP, Inc. v. HUB Int'l Ltd.*,
10 400 P.3d 157, 165 (Ariz. Ct. App. 2017) ("*BNCCORP II*") ("[T]he default rule in Arizona
11 is that a broker who agrees to obtain insurance for a client owes a duty to the client to
12 exercise reasonable care, skill and diligence in so doing.") (internal quotation marks
13 omitted); *accord Fink v. Brown & Brown Program Ins. Serv. Inc.*, No. CV-17-03869-PHX-
14 DLR, 2018 WL 1744999, at *2 (D. Ariz. Apr. 11, 2018).

15 Defendants argue that this duty does not include an obligation to advise insureds
16 about the adequacy or appropriateness of the insurance coverage they purchase. They rely
17 on *BNCCORP II* for this argument. In their view, the Arizona Court of Appeals held as a
18 matter of law that insurance agents do not have a duty to identify clients' needs and advise
19 them appropriately because it is clients' responsibility to determine appropriate coverage
20 and advise the agent of their needs. Somewhat confusingly, Defendants rely on the trial
21 court order in *BNCCORP* and not the Arizona Court of Appeals opinion. *Compare*
22 *BNCCORP, Inc. v. HUB Int'l Ltd.*, No. CV 2012-014329, 2015 Ariz. Super. LEXIS 660,
23 at *20 (Ariz. Super. Ct. June 30, 2015) ("BNCCORP I") *with BNCCORP II*, 400 P.3d 157.
24 The court of appeals opinion, however, makes clear that a duty exists between an insurance
25 broker and a client, and the question before them was the appropriate standard of care, and
26 not whether a broker has a duty to an insured. *BNCCORP II*, 400 P.3d at 165; *see also*
27 *Fink*, 2018 WL 174499, at *3.

28 "Questions as to the applicable standard of care are for the trier of fact." *Id.* The

1  standard of care in these types of cases is not universal, but "an applicable standard should
2  be determined on a case-by-case basis, and is an evidentiary determination that may require
3  proof in the form of expert testimony at trial." *Id.* In *BNCCORP II*, the Court of Appeals
4  affirmed the trial court's finding that the broker "had the duty to exercise the degree of
5  care, skill, and diligence normally exercised by similarly situated insurance brokers having
6  the information provided to [broker] by [insured], advising about coverage, and taking into
7  account [insured's] directions, including the request to match expiring coverages." *Id.* at
8  165. The panel determined the trial court's finding, made in the context of a bench trial,
9  adequately complied with *Darner*'s default rule that an insurance agent owes a duty to
10 exercise reasonable care, skill, and diligence in procuring insurance coverage and took into
11 account *Darner*'s directive to set the applicable standard of care on a case-by-case basis.
12 *Id.* at 166; *see Darner*, 682 P.2d at 402–03; *see also Fink*, 2018 WL 1744999, at *3 ("In
13 *BNCCORP* [*II*], the appeals court credited the trial court's factual finding . . . that the
14 applicable standard of care did not require the insurance agent to 'inform [insureds] about
15 optional coverage that might be available'") (quoting *BNCCORP II*, 400 P.3d at 166).
16 Contrary to Defendants' contention, *BNCCORP II* does not stand for the proposition that
17 that brokers never have an obligation to advise insureds about the adequacy or
18 appropriateness of their coverage. Instead, it reiterated that the applicable standard of care
19 is for the trier of fact to decide.

20 Defendants' urging the Court to consider the "context" of how Plaintiff requested
21 insurance is also unpersuasive. Indeed, it is the context of Plaintiff's request that is exactly
22 what the parties are disputing. Plaintiff alleges Mr. Owen told Mr. Dion he wanted
23 insurance that complied with the warehouse lease agreement. Mr. Owen sent Mr. Dion the
24 lease and other documents and claims Mr. Dion informed him that business income
25 coverage is calculated by the week. Defendants argue Plaintiff merely directed them to
26 procure coverage that allowed Madison Alley to move into the warehouse, and that
27 Madison Alley should have realized they were underinsured because the policy was clear.
28 Both parties support their contentions with admissible evidence. Therefore, the Court finds

there is a genuine dispute as to the material facts and the court will deny Defendants' motion concerning the negligence claim (Count 1).

Additionally, Defendants' only argument as to why Plaintiff's negligent hiring, training and supervision claim (Count 4) fails is because an employer cannot be found liable under that claim unless its employee committed a tort. (Mot. at 11). Because the Court finds a material dispute of fact as to the underlying tort claim, the Court will also deny Defendant's motion for summary judgment regarding Plaintiff's negligent hiring, training, and supervision claim.

3. Damages

Defendants further request this Court to limit the amount of damages to "the lesser of actual damages and the amount the jury determines Mr. Dion *should* have procured" and "that those total damages then be offset by the $456,000 settlement between Fully Loaded and Madison Alley." (Mot. at 16) (emphasis in original). The Court finds this request premature and will deny it without prejudice. Because the Court concludes that that the negligence claims should go to a jury, the issue of whether to limit damages will depend on the jury's determinations as to whether Defendants are liable in the first place. Defendants may renew their request at more appropriate point of this proceeding.

**IV.  Conclusion**

Material issues of fact exist concerning whether Defendants breached the applicable standard of care. Plaintiff's contract claims should be dismissed because the wrong alleged does not arise out of contract and Plaintiff's alleged contract lacks specificity. Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 73):

1. Defendants' Motion for Summary Judgment is **GRANTED IN PART**. It is granted as to the Breach of Contract claim (Count 2), the Breach of the Covenant of Good Faith and Fair Dealing claim (Count 3), and Reasonable Expectations (Count 5);

2. Defendants' Motion for Summary Judgment is **DENIED IN PART**. It is denied

as to the Negligence/Insurance Producer Malpractice claim (Count 1) and the Negligent Training and Supervision claim (Count 4).

3. Defendants' request to limit and offset damages is **DENIED** without prejudice.

Dated this 10th day of July, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge