Robert B. Zelms; Arizona Bar No. 018956
rbz@manningllp.com
Debora L. Verdier, Arizona Bar No. 018676
dlv@manningllp.com
Nishan J. Wilde; Arizona Bar No. 031447
njw@manningllp.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
3636 North Central Avenue, 11th Floor
Phoenix, Arizona 85012
Telephone: (602) 313-5469

*Attorneys for Western Truck Insurance Services, Inc., Robert Dion and Jane Doe Dion*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Madison Alley Transportation & Logistics, Inc., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>Western Truck Insurance Services, Inc., a California corporation, Robert Dion and Jane Doe Dion, husband and wife, John Does and Jane Does I-X, ABC Partnerships I-X, ABC Limited Liability Companies I-X, and XYZ Corporations I-X,<br><br>Defendants. | Case No. 2:17-cv-3038-PHX-SMB<br><br>**REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>(Hon. Susan M. Brnovich) |

Western Truck Insurance Services, Inc. and Robert Dion (collectively "Defendants") hereby file this Reply in Support of Motion for Attorneys' Fees.

**I.    Defendants did not make material misrepresentations regarding settlement negotiations in this matter.**

Plaintiff claims that Defendants made material misrepresentations regarding settlement negotiations in this matter. This is incorrect. During the pre-litigation mediation, Defendants made a final offer to Plaintiff. [**Ex. A**, Decl. of Nishan Wilde at ¶ 3.] During the mediation, that offer was never rejected. [*Id.* at ¶ 4.] Mediator Paul McGoldrick told defense counsel that the parties had a deal, but that Plaintiff wanted to think about the offer one more time overnight. [*Id.* at ¶ 5.] From Mr. McGoldrick's representations, Defendants believed in good

1

faith that a deal had been negotiated and expected a settlement. [*Id.* at ¶ 6.]

Even if Plaintiff never officially accepted Defendants' offer, that is not the point. Section II(B) of Plaintiff's Reply is a red herring. The fact of the matter is Defendants engaged in good faith settlement talks with Plaintiff on several occasions, including pre-litigation mediation, mediation during litigation and at least three offers of settlement via letter. One of the factors the Court must consider is whether litigation could have been avoided or settled. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). Plaintiff had every opportunity to avoid litigation and settle the lawsuit, or at the very least withdraw the contract claims. Instead, Plaintiff moved forward with litigation, and forced Defendants to incur tens of thousands of dollars in legal fees.

**II.     Defendants did not act in bad faith during the June 13, 2019 mediation.**

Plaintiff claims that Defendants acted in bad faith during mediation. This, too, is incorrect. Defendants arrived to the mediation with authorization to settle the case above and beyond the amount previously offered. [*Id.* at ¶ 8.] . Defendants made sure that the individual with final say on settlement was available to approve any agreed upon amount. [*Id.* at ¶ 9.] Defendants made several phone calls to that person during the mediation to discuss settlement and ongoing negotiations. [*Id.* at ¶ 10.]

Plaintiff began the negotiations with an offer close to seven figures[1] – which Defendants considered to be very, very high. [*Id.* at ¶ 11-12.]   As a result, Defendants countered with an offer in the low five figures, a common tactic during negotiations. [*Id.* at ¶ 13.] Defendants expected the parties to engage in several rounds of offers and eventually provide each parties' best offer. [*Id.* at ¶ 14.]  Perhaps the parties would not be able to bridge the gap, but at least Defendants would provide Plaintiff with their best offer – which again, was above and beyond previous settlement offers. [*Id.* at ¶ 15.] Defendants expected a counter offer from Plaintiff to continue negotiations. [*Id.* at ¶ 16.] Instead, Plaintiff left the mediation

---

[1] Defendants will not disclose Plaintiff's offer out of abundance of caution, and to ensure that Plaintiff does not accuse Defendants of disclosing specific Rule 408 settlement communications.

2

after their first offer, with several hours left in the mediation and without ever hearing Defendants' best offer. [*Id.* at ¶ 17.] Defendants acted in good faith during mediation and arrived at mediation in compliance with Plaintiff's pre-mediation requests. [*Id.* at ¶¶ 8-9.] In fact, during a meet and confer regarding attorneys' fees, Mr. Wilde told attorney Bob Mills that Defendants had been willing to offer more money during mediation, and were surprised when the mediation ended so abruptly. [*Id.* at ¶ 18.]

But again, this is a red herring. Defendants engaged in good faith settlement talks with Plaintiff on several occasions. Plaintiff could have settled the case, or at the very least withdraw the contract claims. Instead moved forward with litigation.

### III.     Defendants' Application for Attorneys' Fees is not premature.

Plaintiff's claim attorneys' fees are premature is based on two arguments: (1) that there has been no entry of judgment in this case, and (2) Defendants are not the successful party. However, the case law cited by Plaintiff to support these arguments are distinguishable from the facts in this case.

#### A.     There is no just reason for delay of an entry of judgment.

Plaintiff first cites *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*. In *Oskowis*, the court specifically stated that an entry of judgment is appropriate when "there is no just reason for delay." *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*, 2019 U.S. Dist. LEXIS 71534, at *2 (D. Ariz. Feb. 19, 2019). Here, there is no just reason to delay an award of attorneys' fees under A.R.S. § 12-341.01(A). A.R.S. § 12-341.01(A) allows an award of attorneys' fees for claims "arising out of a contract." This Court dismissed all Plaintiff's contract claims on summary judgment. Therefore, Plaintiff cannot, as a matter of law, be awarded attorneys' fees even if they prevail on their negligence claims. *See Ramsey Air Med, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, 6 P.3d 315, 318 (App. 2000) ("because Ramsey did not prevail on its contract claim, the 'interwoven' nature of the tort claim cannot support an award of fees.") Hence, there is no reason to delay a resolution of this particular

issue, which will decrease and simplify the number of outstanding issues moving forward.[2]

Plaintiff next cites *Safety Dynamics Inc. v. Gen. Star Indem. Co.*. In *Safety Dynamics*, the court ruled that a motion for attorneys' fees cannot be made until the "entry of a judgment." *See Safety Dynamics Inc. v. Gen. Star Indem. Co..* 2015 U.S. Dist. LEXIS 177746, at 26 (D. Ariz. June 18, 2015) Plaintiff maintains that the motion cannot be made until resolution of all claims. But Rule Local Rule 54.2 does not require a "final" judgment. Here, we have asked the Court to grant an "entry of judgment," which would also allow a motion for attorneys' fees.

      **B.**    **Defendants are the successful party on claims "arising out of a contract," and Plaintiff, as a matter of law, cannot be the successful party "arising out of a contract."**

Plaintiff cites to a number of cases to support its claim that the Court must wait until the end of trial to determine who is the "successful party" when there are "multiple-claims." However, none of the cases present the unique situation in which all contract claims were dismissed and only tort claims remained.

For example, in *Schwartz*, the plaintiff brought claims for breach of contract and bad faith insurance – both of which are contract claims.[3] The plaintiff won the breach of contract claim but lost on the bad faith claim. *See Schwartz v. Farmers Ins. Co.*, 166 Ariz. 33, 35, 800 P.2d 20, 22 (App. 1990). Therefore, each party was technically entitled to attorneys' fees and the court had to apply the "totality of the litigation test." *Id.* at 38, 800 P.2d at 25.

Similarly, in *Desert Mountain*, the plaintiff brought claims for breach of contract and breach of the implied duty of good faith and fair dealing. The court granted the insurer's motion for summary judgment on the bad faith claim, but the jury returned a verdict for Desert

---

[2] In addition, there is good reason to award Defendants their attorneys' fees. Settlement discussions between the parties have stalled because the parties' offers differ by a significant amount. If the Court awards the $69,273.50 in fees and the $456,000 set off (which is now ripe because of Plaintiff's Motion in Limine regarding set off), it is possible the parties will be able to avoid a trial and using up judicial resources.

[3] "Arizona courts have determined that attorneys' fees are awardable under [A.R.S. § 12-341.01(A)] to the successful party in bad faith actions. *See Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982).

4

Mountain on the breach of contract claim. *See Desert Mt. Props. Ltd. P'ship v. Liberty Mutual Fire Ins. Co.*, 225 Ariz. 194, 198, 236 P.3d 421, 425 (App. 2010). So, once again, both parties prevailed on claims "arising out of contract," and the court was forced to apply the "totality of the litigation test."

Here, Plaintiff can only prevail on its tort claims. As a matter of law, Plaintiff cannot be the "successful party" in a claim "arising out of a contract" by prevailing on a tort claim. *See Ramsey*, 198 Ariz. at 13, 6 P.3d at 318. As a matter of law, Defendants are the only successful party on claims "arising out of contract."

### IV. Rule 408 protects communications from being admitted at trial, but does not prevent parties to discuss settlement in a motion for attorneys' fees.

Rule 408 serves to insulate the fact-finder from settlement communications in order to prevent the parties from unfairly influencing the fact-finder. Rule 408 is a rule of ***evidence*** and pertains to "admissibility" at trial. *See* Fed. R. Evid. 403(a). Parties are not prevented from referring to settlement negotiations in a motion for attorneys' fees. In fact, one of the factors courts look to when determining attorneys' fees is "whether the litigation could have been avoided ***or settled*** . . . ." *Warner*, 143 Ariz. at 570, 694 P.2d at 1184 (emphasis added). If courts consider whether litigation could have been settled, it stands to reason that the parties are allowed to tell the court about settlement negotiations.

In *Suenos, LLC v. Goldman* – the very case on which Plaintiff relies – the court "directed the parties to exchange settlement conference memorandums prior to the settlement conference, and that the originals of the memorandums ***be provided to this Court***." *Suenos, LLC v. Goldman,* 2014 U.S. Dist. LEXIS 14124 at *3 (D. Ariz. Jan 9, 2014) (emphasis added). The court also "required that the settlement conference memorandums include each party's position on settlement, 'including the amount that the Plaintiff is currently willing to accept and Defendant(s) is/are willing to offer and the history of past settlement discussions, offers and demands." *Id.* Obviously then, the parties are allowed to provide courts with details about settlement discussions.[4]

---

[4] In their Motion for Attorneys' Fees, Defendants provide *generic* information about settlement

5

### V. Plaintiff's contract claims were meritless.

Plaintiff's Response claims that Plaintiff "believed its claims had merit and support from legal authority." *See* Response at p. 9. However, even a cursory glance at relevant legal authority would have informed Plaintiff that its contract claims were meritless. The seminal cases regarding contract claims in the context of professional liability are (1) *Lewin v. Miller Wagner & Co.* and (2) *Barmat v. John and Jane Doe Partners*. These cases were decided in 1986 and 1987, respectively – each over 30 years old. *See Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 725 P.2d 736 (App. 1986); *Barmat v. John and Jane Doe Partners* A-D, Ariz. 519, 524, 747 P.2d 1218, 1223 (1987). The seminal cases regarding the reasonable expectations doctrine are (1) *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.* and (2) *Gordinier v. Aetna Cas. & Sur. Co.* Both of these cases were also decided over 30 years ago. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 390, 682 P.2d 388, 395 (1984); *Gordinier v. Aetna Cas. & Sur. Co.,* 154 Ariz. 266, 272-73, 742 P.2d 277, 283-84 (1987).

Instead of consulting legal authority that has been around for 3 *decades*, Plaintiff disguised its tort claims as contract claims in order to force Defendants to defend this lawsuit under the threat of attorneys' fees. Now that Plaintiff's contract claims have been proved meritless, it cannot hide behind the excuse that it believed its claims were supported by legal authority, when a short and simple search of legal authority would have shown otherwise.

### VI. Awarding fees in this case would not discourage litigants from bringing meritorious claims. Rather, it would encourage litigants to perform pre-suit research in order to bring proper claims under the law.

According to *Warner*, when determining whether to award attorneys' fees, courts consider "whether such a claim or defense had previously been adjudicated in this jurisdiction." *Warner*, 143 Ariz. at 570, 694 P.2d at 1184. As explained above, contract claims

---

discussions – i.e., that the parties engaged in pre-litigation mediation, engaged in mediation during litigation, and made several offers of settlement. Defendants did give not any specifics, including what communications were made, any facts about the case, or any dollar amounts. Ironically, Plaintiff is the one who provides the Court with specific communications about the settlement talks, including specific dollar figures. *See* Response at pp. 3-4.

6

in the context of professional liability and reasonable expectation doctrine claims have been well settled for 30 years. Awarding fees in this case would not discourage litigants from bringing meritorious claims.[5] On the contrary, it would *encourage* litigants to determine which claims are proper and legally-supported before filing suit and forcing the defense of meritless claims.

### VII. It is well-established law that the successful party on a contract claim can recover attorneys' fees for <u>both</u> contract claims and "interwoven" tort claims.

"It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim." *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 522, 212 P.3d 853, 860 (App. 2009); *see also Campbell v. Westdahl*, 148 Ariz. 432, 441, 715 P.2d 288, 297 (App. 1985) ("Attorneys' fees may be awarded under § 12-341.01(A) for tort claims that are intertwined with contract claims."); *Schweiger v. China Doll Rest, Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983) (in cases where "one claim for relief may involve related legal theories," "[m]uch of counsel's time [may] be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis"). "Claims are sufficiently interwoven when they require the same factual development and research to resolve the litigation." *Cheval Farm, LLC v. Chalon*, 2013 U.S. Dist. LEXIS 191163 *5 (D. Ariz. Aug. 21, 2013). Claims are sufficiently interwoven when they are "based on the ***same set of facts***" involving "***common allegation[s]***." *Jigsaw*, 221 Ariz. at 522, 212 P.3d at 860 (emphasis added).

In this case, Plaintiff's tort claims are based on the following allegations: that Defendants (1) failed to advise only $20,000 of BI coverage was procured, (2) failed to advise that the BI coverage procured was inadequate, (3) failed to explain the terms of the BI policy, (4) failed to explain the meaning of the 90% coinsurance clause, (5) failed to provide a copy of the policy, (6) failed to obtain the requested amount of BI insurance, (7) failed to obtain BI

---

[5] This assumes the contract claims were meritorious in the first place. They weren't, as 30 years of Arizona case law have proven.

7

coverage consistent with the information provided and readily available, and (8) only obtained $20,000 in BI coverage with a 90% coinsurance clause. [**Exhibit B**, Complaint at ¶¶ 70-73.] Plaintiff's contract claims are based on the following allegations: that Defendants (1) procured BI coverage only in the amount of $20,000 with a 90% coinsurance clause, (2) failed to explain the terms of the BI coverage, (3) failed to procure the full amount of BI insurance agreed upon, and (4) failed to afford proper BI coverage. [*Id*. at ¶¶ 77-78, 83, 92.]

Both the contract claims and the tort claims are based on identical allegations. It is indisputable that these claims are interwoven. The exact same factual development and research were required for Defendants to defend against both the contract claims and the tort claims. Therefore, Defendants are entitled to fees for the contract claims and tort claims. As stated in the Motion for Attorneys' Fees, that amount is $69,273.50.

### VIII.  Conclusion

For the reasons set forth herein, Defendants ask the Court to award Defendants $69,273.50 in attorneys' fees against Plaintiff. If the Court believes that the Motion is premature, Defendants reserve the right to re-file the Motion at the end of trial.

DATED:  August 29, 2019

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By:  *s/ Nishan J. Wilde*
Robert B. Zelms
Debora L. Verdier
Nishan J. Wilde
*Attorneys for Defendants Western Truck Insurance Services, Robert Dion and Jane Doe Dion*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August 2019, I electronically filed the foregoing, using the CM/ECF system, which served the following CM/ECF participants:

Robert T. Mills
Sean A. Woods
Jordan Wolff
MILLS + WOODS LAW, PLLC
5055 N. 12th Street, Suite 101
Phoenix, AZ  85014
*Attorneys for Plaintiff*

By s/ Diana Drake